IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DEBORAH JAGGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4272-CV-C-NKL |
| ) | |
| MISSOURI DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

ORDER

Plaintiff Deborah Jagger ("Jagger") sues her former employer, Defendant Missouri Department of Corrections ("DOC"), for sex discrimination (Count I) and for retaliation (Count II) under Title VII, 42 U.S.C. § 2000(e), *et seq*. The DOC has moved for summary judgment on both Counts [Doc. # 28]. For the reasons set forth below, the DOC's Motion will be granted as to all claims except the hostile work environment alleged in Count I.

I.  **Undisputed Facts**

Jagger worked as a correctional officer at the Northeast Correctional Center ("NECC") in Bowling Green, Missouri, from July 2000 to October 2005. She always received successful performance evaluations. During her tenure, several male employees at NECC made sexually suggestive comments to Jagger or to other women in her

1

presence. For example, after Jagger told another officer that she was going to her locker to get some coffee and coffee cups, corrections officer Robert Norton stared at Jagger's breasts and responded, "I like your cups." Def. Ex. E. On another occasion, another female officer had bent over a table to examine some photographs of a baby when officer Norton came up behind her and told her to "hold that position." On yet another occasion during a power outage, Jagger was preparing to go through the "air locks" at the prison when officer Norton reached toward her breasts and stated that due to the power outage he would have to "feel [his] way through the dark." When Jagger reported these incidents to Major Thompson, she was told in the presence of her supervisor, Captain James Burgess, that Thompson considered the issue resolved and that he didn't want to hear any more about sexual harassment. *Id.*

On other occasions, Jagger complained to Thompson that a particular officer had said, "Hey Jagger come put those big tits all over me" or "rub those big tits in my face." The officer in question was not disciplined and was eventually promoted to captain and transferred to another facility. Another officer referred to her breasts as "built-in floating devices." He was also eventually promoted to sergeant. Another sergeant once told Jagger in front of a prisoner to "stick around so I can play with your big tits." Later, another officer asked Jagger, in front of several inmates, "when are you going to show me your tits?" *Id.* All of these incidents were reported either to Jagger's supervisor who reported them to Major Thompson, or to Thompson himself. No action was ever taken to

2

stop the comments or to discipline the officers involved. Jagger also heard rumors that new employees were told to avoid her because she was a troublemaker.

In mid 2004, Jagger filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Missouri Commission on Human Rights ("MCHR"), alleging discrimination based on sex and retaliation for complaining about the discrimination. In February of the following year, she requested and was approved for a transfer to the Missouri Eastern Correctional Center in Pacific, Missouri. However, a few days after the transfer was approved, NECC superintendent Jim Moore requested an investigation into telephone calls made by an inmate during which the inmate made reference to a "Miss J" who was allegedly helping him secure a transfer to a different facility. The inmate said that he knew Miss J's son, who was in the other facility, and that she was writing a favorable report for him to further his transfer. Moore rescinded Jagger's own transfer pending an investigation into whether she had been attempting to improperly manipulate the transfer process on behalf of a prisoner. It is unclear what became of the investigation, but Jagger was never transferred.

On August 6, 2005, Lieutenant Ronald Burgess informed Jagger that she would have to work an overtime shift to cover for a staff shortage. Normally, if a corrections officer is given at least an hour's notice that she must work over time, DOC regulations require the officer to do so. Jagger was not given an hour's notice and had already made arrangements for her husband to pick her up at another location at the normal time.

Because she had no way of contacting her husband to inform him of the change, she refused to work the extra shift.

Jagger began seeking treatment for depression and other medical treatments in the summer of 2005. Following the overtime incident, her doctor, Robert Hicks, M.D., signed a physician's statement certifying that Jagger was under his care for major depression and would be unfit for duty for at least three months. On August 24, Superintendent Moore warned Jagger that she would be disciplined if she did not return to work. She never returned and her employment was terminated on October 10, 2005.

## II. Discussion

### A. Count I–Sex Discrimination

It is not entirely clear from Jagger's Complaint–or her briefing in opposition to the DOC's Motion for Summary Judgment–which theory or theories of discrimination she is advancing under Count I. Because the Defendant addresses the denial of her transfer, her termination, and her allegations of a hostile work environment separately, the Court will assume Jagger is advancing all three as separate claims of discrimination.

#### 1. Denial of Transfer

The Eighth Circuit follows the familiar burden-shifting analysis first articulated in *McDonnell Douglas Corp. V. Green*, 41 U.S. 792 (1973), to analyze motions for summary judgment in Title VII cases. *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005). Under this framework, a plaintiff first has to establish a prima facie case by showing that (1) she is a member of a protected group, (2) she was meeting the

legitimate expectations of her employer, and that (3) she suffered an adverse employment action (4) under circumstances permitting "an inference of discrimination." *Id.* If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the action. *Id.* If the defendant does so, the plaintiff must offer evidence showing that the defendant's legitimate reason is merely a pretext for discrimination. *Id.*

Even assuming that Jagger has exhausted her administrative remedies for the denial of her transfer,[1] and assuming that she can make out the other elements of her prima facie case, Jagger is unable to demonstrate that Superintendent Moore's decision to rescind her transfer qualifies as an adverse employment action. "[A] purely lateral transfer, that is a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Jones v. Fitzgerald*, 285 F.3d 705, 714 (8th Cir. 2002). "Moreover, . . . a transfer or reassignment which involves only minor changes in working conditions and does not involve a reduction in pay or benefits does not constitute an adverse action." *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). If an involuntary lateral or minor transfer does not constitute an adverse employment action, resciding such a transfer likewise does not qualify. Jagger ended up in the same position she was in before she applied for the transfer. She suffered no

---

[1]Defendants argue that Jagger has not exhausted her remedies for the denial of her transfer or for her termination because these actions occurred after and are not reasonably related to her 2004 charge of discrimination filed with the EEOC. Because the Court concludes that no reasonable juror could find facts in Jagger's favor to support either claim, it need not consider whether she properly exhausted these claims first.

5

change of circumstances. Because rescinding a previously approved lateral transfer is not an adverse employment action, the DOC is entitled to summary judgment on this claim.

### 2. Termination

Jagger also argues that her termination constitutes an instance of discrimination based on sex. Even if the Court assumes that she has made out a prima facie case of discrimination as to her termination, the DOC has offered a legitimate, nondiscriminatory rationale for firing her. The DOC required Jagger to work an overtime shift which she refused to do. She did not return to work for any more regularly scheduled shifts after that request despite a warning that her continued absence would lead to termination. After more than a month of absences, her employment was eventually terminated. Refusal to work as instructed and job abandonment are legitimate, non-discriminatory reasons for terminating employment. *See Jones v. UPS*, 461 F.3d 982 (8th Cir. 2006); Price v. S-B Power Tool, 75 F.3d 362, 366 (8th Cir. 1996) (termination for excessive absenteeism held legitimate, non-discriminatory reason). Because the DOC has offered a legitimate basis for terminating Jagger's employment, the burden shifts back to her to show that the DOC's proffered reason was mere pretext for discrimination.

Jagger's sole support for pretext is inadmissible hearsay evidence suggesting that a male employee was not disciplined for refusing to work a mandatory overtime shift. Moreover, she offers nothing to refute DOC's assertion that she was terminated for missing over a month of work. Although she suggests that her absences were due to depression as attested to by her doctor, Jagger has not sued under the ADA. Title VII does
6

not prevent an employer from terminating an employee who fails to show up for work. Because no reasonable juror could find that the DOC's basis for terminating Jagger's employment was mere pretext for sex discrimination, summary judgment must be granted as to this claim as well.

### 3. Hostile Work Environment

To establish a claim under Title VII for hostile work environment, a plaintiff must show that (1) she was a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was because of her membership in the group; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known about the harassment but failed to take prompt and effective remedial action." *Diaz v. Swift-Eckrich, Inc*., 318 F.3d 796, 800 (8th Cir. 2003).

There is no dispute as to the first three of the fifth elements in this case. The only issue is whether a reasonable juror could find that the conduct alleged rises to a level sufficient to alter a term, condition, or privilege of employment. In making this assessment,

> [the Court] must look at all the circumstances to assess the degree of the harassment, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; . . . whether it unreasonably interferes with an employee's work performance; physical proximity to the harasser[;] and the presence or absence of other people. Although infrequent rude behavior does not create a hostile environment, such claims may be based on the cumulative affect of individual acts.

*Diaz v. Swift-Eckrich, Inc*., 318 F.3d 796, 800 (8th Cir. 2003) (internal quotations omitted). "Simple teasing, offhand comments, and isolated incidents generally cannot

7

amount to severe or pervasive harassment." *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). "Sporadic use of abusive language, gender-related jokes, and occasional teasing are the ordinary tribulations of the workplace, and as such, they do not amount to actionable harassment." *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir. 1999) (internal quotations omitted).

The evidence before the Court suggests that over a span of four years, Jagger was subjected to inappropriate and sexually suggestive comments from several male coworkers. Most of these comments focused on her breasts, including remarks to "come put those big tits all over me," "rub those big tits in my face," "stick around so I can play with your big tits," or "when are you going to show me your tits?" In addition, one officer remarked "I like your cups" on one occasion, and suggested he would have to "feel [his] way through the dark" on another when he and Jagger were in the same room during a power outage. There is evidence that some of the comments were made in front of other coworkers or prison inmates. There is evidence that Jagger was demoralized by these comments, that she repeatedly complained of her treatment, and that no action was taken against the offending officers. In fact, there is evidence that the offending officers were promoted. There is evidence that the continual harassment led Jagger to seek medical treatment for severe depression as a result of these comments, for which her doctor recommended she not return to work. After a careful study of Eighth Circuit Title VII cases, the Court concludes that a reasonable juror could find this kind of sustained harassment severe enough to alter a term, condition, or privilege of employment.

8

In *Wright v. Rolette County*, a case with similar facts to the one before this Court, the Eighth Circuit affirmed a district court's denial of qualified immunity in a hostile work environment claim brought under 42 U.S.C. § 1983 by a deputy in the county sheriff's office. 417 F.3d 879 (8th Cir. 2005). In *Wright*, the plaintiff's coworkers–including the county sheriff–made repeated comments that she was a "big-breasted Canadian secretary," a "dizzy bitch," and "Canadian bacon." *Id.* at 882. On one occasion the Sheriff referred to the plaintiff as "Canadian bacon" at a Peace Officer's Association meeting, and all in attendance heard the comment. *Id.* The sheriff also repeatedly made comments about a "potty cam" when the plaintiff returned from the restroom. *Id.* In another incident, the sheriff told plaintiff he could use a "blow job" after hearing her explain that some police training she had received allowed her to knock somebody out with one blow. *Id.* at 882-83. The sheriff also made comments to the plaintiff about "rubbing [her] tits with toilet paper" and referred to her vagina as a "snapper." *Id.* at 883. He also stroked his mustache while telling the plaintiff that he was "clearing off her seat." *Id.* The plaintiff protested these activities, but her objections were ignored. *Id.* Eventually, the plaintiff was treated for anxiety and depression.

In the first step of its qualified immunity analysis, the Eighth Circuit considered whether these comments sufficed as a constitutional violation. The court began by noting that Section 1983 and Title VII used the same standard for assessing hostile work environments. The court of appeals went on to hold that "[the sheriff]'s behavior was more serious than simple teasing, and it was not sporadic nor isolated. The effect of the

9

harassment was so serious that [the plaintiff] ultimately sought medical treatment for depression, high blood pressure, and anxiety caused by the harassment. [The plaintiff] also alleges that she complained to [the sheriff] and to the county and that nothing was done to stop the behavior. These facts, if proven to be true, support a claim for sexual harassment." *Id.* 886.

Like the plaintiff in *Wright,* Jagger was subjected to frequent, lewd comments about her breasts in the presence of other coworkers and even inmates. These comments forced Jagger to seek medical treatment, as similar comments had in *Wright.* As in that case, all of Jagger's complaints went unheeded. Because these facts, if proven to be true, support a claim for a hostile work environment, summary judgment must be denied. *Compare Eich v. Bd. of Regents for Cent. Mo. St. Univ*., 350 F.3d 752, 755-56 (8th Cir. 2003) (finding conduct sufficiently severe when plaintiff was frequently touched in numerous suggestive ways and was subject to simulated sex acts.); *Beard v. Flying J., Inc*., 266 F.3d 792, 797 (8th Cir. 2001) (affirming a judgment for plaintiff based on another employee brushing, rubbing and flicking plaintiff's breasts and pointing to his crotch); *Howard v. Burns Bros, Inc*., 149 F.3d 835, 838 (8th Cir. 1998) (describing a co-employee constantly saying sexual innuendos, brushing up against plaintiff and telling lewd jokes with gestures) *with Henthorn v. Capitol Communs., Inc.,* 359 F.3d 1021, 1025 (8th Cir. 2004) (affirming summary judgment for employer because coworkers requests that plaintiff go out with him were "repetitive and annoying, but they were not lewd or threatening."); *Alagna v. Smithville R-II Sch. Dist.,* 324 F.3d 975, 977 (8th Cir. 2003)

(affirming district court's grant of summary judgment to school district because teacher's frequent affectionate and sexually suggestive comments to guidance counselor were not severe enough to create hostile work environment).

   **B.   Count II–Retaliation**

In order to state a prima facie case for retaliation under Title VII, a plaintiff must offer evidence (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal connection linked her protected activity and the adverse employment action. *Krough v. Cessford Constr. Co.,* 336 F.3d 710, 712 (8th Cir. 2003). There is no dispute that Jagger engaged in protected activity; however, the other two elements require further discussion.

In retaliation cases, an adverse employment action is any consequence that would induce a reasonable person not to engage in the protected behavior. *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006). Jagger alleges four possible adverse employment actions: (1) the DOC told new employees not to associate with her because she was a trouble maker, (2) she was threatened by those coworkers she had reported for making offensive comments, (3) her previously approved transfer was rescinded, and (4) her employment was terminated. As for the last two, termination is an adverse employment action, and rescinding a much desired transfer that had already been approved would be sufficiently adverse to keep a reasonable employee from exercising her rights under Title VII.

11

However, there is no evidence before the Court from which a reasonable juror could find that these actions were causally linked to Jagger's protected activity. Jagger filed her charge of discrimination with the EEOC in July 2004. Her transfer was approved and then rescinded in February 2005, and she was terminated in October 2005. The Eighth Circuit has held that "the time interval of more than two months is too long to support an inference of causation." *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003). Other than the fact that her transfer recission and termination followed the EEOC complaint, Jagger has not produced any evidence to suggest any causal connection. Moreover, even if Jagger had introduced some evidence of a causal connection sufficient to shift the burden to the Defendants, the DOC has offered a legitimate non-discriminatory basis for both actions. As discussed in Count I above, Jagger's transfer was rescinded pending an investigation into her involvement in the transfer of a prisoner who was a friend of her son. Her termination resulted from missing two months of work. No reasonable juror could find that the proffered reasons for either action were mere pretext for retaliation on the evidence presently before the Court. Summary judgment is therefore warranted on the retaliation claim.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Defendant's Motion for Summary Judgment [Doc. # 28] is GRANTED in part and DENIED in part. The Motion is DENIED as to the hostile work

12

Case 2:05-cv-04272-NKL   Document 35   Filed 10/31/06   Page 12 of 13

environment claim in Count I. The Motion is GRANTED as to all other claims in Count I and as to all claims in Count II.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: October 31, 2006
Jefferson City, Missouri